# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH M. H. STEELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:11CV150MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the applications of Elizabeth M.H. Steele ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g) et seq. Plaintiff filed a Brief in Support of the Complaint. Doc. 12. Defendant filed a Brief in Support of the Answer. Doc. 13. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Doc. 7.

## I.
## PROCEDURAL HISTORY

Plaintiff filed applications for benefits on October 31, 2008, alleging a disability onset date of June 1, 2008. Tr. 139-46. Following an unfavorable determination, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 86-90. On May 26, 2010, a hearing was held before an ALJ. Tr. 23-79. By decision dated August 10, 2010, the ALJ found that Plaintiff was not disabled through the date of the decision. Tr. 6-22. On July 9, 2011, the Appeals Council denied

Plaintiff's request for review. Tr. 2-4. As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.

Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d

65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject

to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).

The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert ("VE") may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180.

Use of the Medical-Vocational Guidelines ("Guidelines") is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff was born on November 18, 1968, and alleges that she became disabled on June 1, 2008, due to fibromyalgia, arthritis, and depression. Plaintiff further contends that she has chronic pain affecting her back, feet, legs, knees, arms, and muscles and that she has a history of carpal tunnel syndrome. At the hearing, Plaintiff testified that she did not complete the eighth grade; that she last worked at a family diner for four days; that she stopped working at the diner because she was unable to handle taking her medicine and continue working; that, in regard to her leaving her job at the diner, her employer fired her because he discovered she was taking Lorcet for pain; that her previous work also included providing in-home aid services for an elderly person and working at a Kentucky Fried Chicken store; that she was fired from the home health care job because of a lack of transportation; that, at the time of the hearing, she had pain all the time; that she could stand about thirty minutes and lift a gallon of milk; that, after walking a block or two, she needed to rest thirty minutes; that she could sit for thirty to forty-five minutes; and that she had panic atttacks without warning, impaired

concentration, difficulty handling stress, memory lapses, and occasional suicidal ideation. Tr. 30-48.

The ALJ found that Plaintiff had not performed substantial gainful activity since June 1, 2008, her alleged onset date; that Plaintiff had one or more impairments which qualified as severe; that Plaintiff did not have an impairment or combination of impairments which met or equaled a listed impairment; that, because of her sparse work history, Plaintiff did not have past relevant work; that Plaintiff had the RFC for light work with certain restrictions; that, based on a VE's testimony that there was both light and sedentary work in substantial numbers in the Missouri and national economy which a person with Plaintiff's RFC could perform; and that, therefore, Plaintiff was not disabled. Tr. 6-22.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the opinion of her treating doctor; because the ALJ did not make a proper RFC determination; because the ALJ should have credited Plaintiff's testimony regarding her conditions; and because the ALJ did not submit a proper hypothetical to the VE.

## A.     Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court

cannot substitute its judgment for that of the ALJ. Guilliams , 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's activities of daily living. Tr. 10. Indeed, Plaintiff testified that she cooked her sons, who were eighteen and sixteen at the time of the hearing, "a big dinner ... like pork steaks, potatoes." Tr. 49. In addition, the court notes that Plaintiff reported, in a Function

Report - Adult, that she vacuumed, did laundry, dusted and tried to mop; that she cooked supper for her family; that she prepared meals on a daily basis and that it took her "1 hour or so"; that she shopped for "things [she] need[ed]"; that she cared for her children and pets; that she went "to church every time [she] [could]"; that she could no longer do crafts; that she went camping "but [could not] participate in much cause of illness"; that she spent time with others "every week sometimes everyday"; that, on a regular basis, she went to "church, mother-in-laws & mothers & cousins"; and that she did not have "any problems getting along with family, friends, neighbors, or others." Tr. 178-83. In response to a question asking her to "describe any changes in social activities since the illnesses, injuries, or conditions began," Plaintiff said that she "[c]an't work, can't stand long, can't do things like I use to." Tr. 183. While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy, 953 F.2d at 386; Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and her activities diminish her credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen, 75 F.3d at 439-41(holding that a claimant's

daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit his complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Second, the court notes that there is a lack of objective medical evidence, including test results, to support Plaintiff's claim of debilitating pain. For example, May 18, 2009 nerve conduction studies showed mild carpal tunnel syndrome on the right. Tr. 250. A December 18, 2006 esophogram showed a single episode of *mild reflux* with a small sliding hiatal hernia. Tr. 274. An October 14, 2007 EGD showed that Plaintiff's esophagus was normal; that the gastroesophageal junction was normal; and that Plaintiff had chronic gastritis and duodenitis. Tr. 297-98. October 17, 2007 imaging showed a small complex lesion of the left pelvis. Tr. 290. On February 13, 2008, it was reported that x-rays of both hands were within normal limits. Tr. 237. Plaintiff had left carpal tunnel release on June 6, 2008. Tr. 313-14. When Plaintiff complained of worsening heartburn on November 18, 2008, an upper GI showed moderate gastroesophageal reflux, mild tertiary contractions in the distal esophagus, and an otherwise unremarkable study. Tr. 318. A November 10, 2009 x-ray of the lumbar spine showed *mild* degenerative changes with disc space narrowing at L5-S1; that there was small early osteophyte anterior superior aspect of L4; and that the pedicles and transverse processes and S1 joints were normal. Tr. 366. A December 17, 2009 MRI of the lumbar spine showed *benign* hemangioma, *minimal* lumbar spondylosis, *mild* facet arthropathy, *no lumbar central canal or foraminal stenosis*, and probable renal cyst. Tr. 368-69. As such, the court finds that the ALJ properly considered the lack of objective medical evidence and that the ALJ's decision,

in this regard, is supported by substantial evidence.

Fourth, as considered by the ALJ, it was recommended that Plaintiff *exercise*. Tr. 227, 231, 232. Also, Jeffrey P. Appleman, a podiatrist, recommended that Plaintiff use *over-the-counte*r orthotic management including longitudinal arch stabilization. Tr. 382. See <u>Constock v. Chater</u>, 91 F.3d 1143, 1147 (8th Cir. 1996) (holding that, upon discrediting the claimant's allegations of back pain, the ALJ properly considered that Plaintiff took aspirin, used a whirlpool tub, and had his wife rub ointment on his back to relieve pain); <u>Benskin</u>, 830 F.2d at 884 (holding that disabling pain not indicated when claimant merely took hot showers and used Advil and aspirin to relieve pain). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

Fifth, the ALJ considered that the majority of Plaintiff's medical records pre-dated her alleged onset date and that during her alleged period of disability her records were not as extensive. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. <u>Roberts v. Apfel</u>, 222 F.3d 466, 469 (8th Cir. 2000) (citing <u>Dixon v. Sullivan</u>, 905 F.2d 237, 238 (8th Cir. 1990)); <u>Comstock v. Chater</u>, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing <u>Benskin</u>, 830 F.2d at 884); <u>Polaski</u>, 739 F.2d at 1322. Additionally, a lack of objective medical evidence contradicts a claimants allegations of disabling pain. <u>Comstock</u>, 91 F.3d at 1147 (citing <u>Smith v. Shalala</u>, 979 F.2d 1371, 1374 (8th Cir. 1993).

Sixth, as considered by the ALJ, it was reported that medication and treatment helped with Plaintiff's pain. Tr. 11-15, 323. For example, Stephen Bush, M.D., reported, on June 14, 2006, that after Plaintiff underwent right carpal tunnel release, the pain and numbness in her right hand improved. Tr. 264. It was reported, on May 14, 2008, that symptoms of Plaintiff's reflux disease improved after she started Nexium; that Plaintiff's symptoms of depression, including her mood,

improved after she started Celexa; and that her symptoms of fibromyalgia "improved greatly" after Plaintiff started taking Lyrica. Tr. 233. On February 16, 2010, Benjamin H. Soeter, M.D., stated in a pain clinic note, that Plaintiff returned "post rhizotomy. [Plaintiff] reported 40% relief in writing. Verbally report[ed] it helped and was worth it. 10/10 pain. Overall functional impairment 6-9/10." Tr. 375. Conditions which can be controlled by treatment are not disabling. See Brown v. Astrue, 611 F.3d 941, 955 (8th cir. 2010); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

Seventh, as noted by the ALJ, it was reported that Plaintiff was non-compliant with her doctor's recommendations. Tr. 10-14. For example, on February 13, 2008, it was reported that Plaintiff was smoking a pack of cigarettes a day; that the doctor explained the risks of smoking; and that Plaintiff refused the nicotine patch and Chantix. Tr. 238. When it was recommended, on March 13, 2008, that Plaintiff stop smoking, she again refused a nicotine patch. Tr. 236. It was also reported on this date that Plaintiff had stopped taking Lexapro "by herself." Tr. 236. A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (holding that an ALJ can discredit subjective complaints of pain based on claimant's failure to follow prescribed course of treatment). Additionally, subjective complaints of pain may be discredited where a claimant ceases

to stop smoking upon a doctor's advice. See Wheeler v. Apfel, 224, F.3d 891, 895 (8th Cir. 1996) (citing Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997)) (holding that impairments which are controllable or amendable to treatment including certain respiratory problems, do no support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application for benefits). Indeed, Plaintiff testified that she did not follow the podiatrist's recommendation that she obtain orthotics because she could not afford them. Tr. 55. See Riggins v. Apfel, 177 F.3d 689 (8th Cir. 1999) ("Although [the plaintiff] claim[ed] he could not afford [] medication, there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication."). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

Eighth, the ALJ considered that no physician who treated Plaintiff or examined her opined that Plaintiff had disabling physical limitations or placed any limitations on Plaintiff's ability to stand, sit, walk, bend, lift, carry, or do other basic exertional activities. Tr. 14. In fact, on February 13, 2008, it was reported that Plaintiff had "no decrease in range of motion." Tr. 237. On March 13, 2008, it was reported that Plaintiff's "motor [was] 5/5"; that she had no focal neurologic deficits; that, in regard to her extremities, Plaintiff had tenderness; that her peripheral pulses were present; and that she had no edema. Tr. 236. On April 11, 2008, Philip W. Taylor, M.D., reported that, on examination, motor testing was normal in the upper and lower extremities; that reflexes were present and equal in the upper and lower extremities; that pin and vibration sensation were normal in the upper and lower extremities; that Plaintiff had "no limitation of motion, pain on motion, crepitation, subluxation, or effusion of any joint in either of the upper or lower extremities"; and that a number

of tender zones were noted over the trapezius muscles, lateral elbows, and lateral hips. Tr. 226. Upon considering a claimant's credibility it is proper for an ALJ to consider that no physician placed limitations on a claimant. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 1069) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir.1996)). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

Ninth, the ALJ considered that Plaintiff had "a steady but very mediocre work record in terms of earnings up to and including her alleged onset date of disability." Tr. 11. In particular, the ALJ considered that Plaintiff earned "a bit under $8800 in 2004 from two different jobs, and that was by far her best earnings year." Tr. 11. A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). As such, the court finds that the ALJ's consideration of Plaintiff's work history is based on substantial evidence and that it is consistent with the Regulations and case law.

Tenth, in regard to Plaintiff's alleged mental impairments, the ALJ considered that Plaintiff did not see Ferdinand C. Armas, M.D., a psychiatrist, until March 26, 2009; that Dr. Armas saw Plaintiff at monthly intervals from July 2009 to May 2010; that the first two times Dr. Armas noted that Plaintiff was irritable; that once she alleged auditory hallucinations; and that on all other occasions that Plaintiff's mental status was stable and normal. Tr. 12, 13. The court notes that, on

March 26, 2009, Dr. Armas reported that Plaintiff's attitude was cooperative; that her motor activity was calm; that her affect was appropriate; that her mood and speech were normal; that her thought process was intact; that her thought content was within normal limits ("WNL"); that hallucinations, delusions, and suicidality were not present; that her insight was fair; that she was oriented to person, place, time, and situation; that her cognition was normal; that she had no memory problems; that her comprehension was WNL; and that her intellectual functioning was average. Tr. 335-38.  On May 14, 2009, July 10, 2009, August 10, 2009, September 9, 2009, October 9, 2009, November 11, 2009, December 10, 2009, January 8, 2009, February 5, 2010, March 5, 2010, April 5, 2009, May 4, 2010, and two other dates[1] Dr. Armas consistently reported that Plaintiff was alert, cooperative, goal directed, and appropriately groomed; that her affect was broad; that her mood was WNL; that she had clear speech and fair insight/judgment; and that she was not suicidal. Tr. 346-52, 377-80. The ALJ also considered that Dr. Armas found that Plaintiff had a global assessment of functioning ("GAF") of 45/50, which indicates that Plaintiff had no better than moderate difficulty with social and occupational functioning. See Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir.2008)); Constock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir.1993) (holding that an ALJ properly discounted a claimant's complaints of pain when the medical evidence failed to establish a significant back problem).  However, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs'" and has indicated that GAF scores have "no direct correlation to the severity requirements of the mental disorder listings."  65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000).  See Constock, 91 F.3d at 1147; Smith, 987 F.2d at

---

[1]        Two of Dr. Armas's treatment notes are undated. Tr. 341-42, 380.

1374. The court finds that the ALJ's consideration of treatment notes regarding Plaintiff's allegations of the severity of her mental impairment is supported by substantial evidence and that it is consistent with the Regulations and case law.

Eleventh, the ALJ considered that, to the extent Plaintiff's "physical activities are restricted, they [were] restricted much more so by her choice than by any apparent medical prescription." Tr. 14. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 1069) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir.1996)). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Twelfth, the ALJ considered Plaintiff's demeanor at the hearing. In particular, the ALJ considered that Plaintiff displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance at the hearing. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones v. Callahan,122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined

his review of the record as a whole with his personal observations. As such, the court finds that the ALJ properly considered his observations and that the ALJ's decision, in this regard, is based on substantial evidence.

In conclusion, the court finds that the ALJ's credibility determination in its entirety is based on substantial evidence and that it is consistent with the regulations and case law.

## B.    Dr. Armas's Opinion:

Plaintiff contends that the ALJ did not give proper weight to Dr. Armas's opinion as stated in an April 16, 2009 Medical Source Statement - Mental ("MSS-Mental"). Tr. 324-25. On this form, Dr. Armas stated that Plaintiff was "markedly limited" in regard to understanding and memory; that she was "markedly limited" in all aspects of concentration and persistence with the exception of the ability to carry out very short and simple instructions, in which area she was moderately limited; that she was "markedly limited" in all aspects of social interaction with the exception of the ability to ask simple questions or request assistance, in which area she was moderately limited; that, in regard to adaption, she was moderately limited in ability to be aware of normal hazards and take appropriate precautions and ability to travel in unfamiliar places or use public transportation; and that, in regard to adaption, she was markedly limited in ability to respond appropriately to changes in the work setting and to set realistic goals and make plans independently of others.

Indeed, Dr. Armas was Plaintiff's treating psychiatrist. "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch, 201 F.3d at 1012-13.

Indeed, if the opinion of a treating doctor is not controverted by substantial medical or other evidence, it is binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)).

First, as discussed above, in regard to Plaintiff's credibility, the ALJ noted that Dr. Armas treatment notes were inconsistent with his findings on the MSS-Mental. In particular, Dr. Armas's notes consistently reflected that Plaintiff's examinations were predominately normal. See supra at 17. Significantly, during mental status examinations, Dr. Armas reported that Plaintiff's process was intact, her thought content was WNL, and her insight and judgment were fair, despite Dr. Armas's reporting on the MSS-Mental that Plaintiff was markedly limited in all areas of understanding and memory and all but one area of concentration and persistence. Tr. 324-25, 355-38, 346-52, 377-80. Thus, Dr. Armas's findings on the MSS-Mental were inconsistent with his own treatment notes. An ALJ may "discount or even disregard the opinion of a treating physician where the treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. See also Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir.2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment).

Second, as discussed above in regard to Plaintiff's credibility, the ALJ considered that, prior to Plaintiff's seeing Dr. Armas, Oscar Rodriguez, M.D., prescribed anti-depressant medication for Plaintiff and reported that Plaintiff's symptoms improved when she took Celexa and that when

Plaintiff did not take her medication she became more depressed. Tr. 12. The court has found that the ALJ properly considered that Plaintiff's symptoms improved with medication and properly considered her non-compliance.

Third, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo, 377 F.3d at 805-06; Hogan 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996). See also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011) (holding that checkmarks on a Medical Source Statement are "conclusory opinions" which can be discounted if contradicted by other objective medical evidence); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) ("'The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value'. ... Indeed, '[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.'") ( quoting Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir.2001) and Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir.1996)).

Fourth, the ALJ provided good reasons for not giving controlling weight to Dr. Armas's opinion on the MSS-Mental. SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5. See also Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007).

Fifth, upon failing to give Dr. Armas's opinion controlling weight the ALJ considered the record as a whole, including Dr. Armas's treatment notes and the notes of other doctors. When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater,

85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole.").  "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006) (quoting Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted).

Sixth, the ALJ did give some weight to Dr. Armas's opinion as reflected in the ALJ's RFC finding. See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (The ALJ's having found Plaintiff "limited to sedentary work [is] in itself is a significant limitation, which reveals that the ALJ did give some credit to [the physician's] medical opinions.").

Seventh, at the time Dr. Armas completed the MSS-Mental he had been treating Plaintiff for less than a month.  Likewise, Dr. Armas assigned Plaintiff a GAF of 45/50 upon his initial evaluation of Plaintiff.  Moreover, he never revisited this finding in later treatment notes.  "Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i). See also Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in a checklist should not have been given controlling weight because the doctor had met with the plaintiff only three times at the time he completed the form). "When deciding 'how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations.'" Martise, 641 F3d at 926 (quoting Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007)).

Eighth, to the extent Dr. Armas meant to opine that Plaintiff could not work, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the

Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature.").

Ninth, to the extent Plaintiff argues that she should be found disabled based merely on Dr. Armas's finding that she has a mental disorder, the mere presence of a mental impairment is not disabling in itself. See, e.g., Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990); Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981).

Tenth, as discussed above, the ALJ considered Plaintiff's demeanor, and considered that it was inconsistent with Dr. Armas's opinion in that Plaintiff displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance at the hearing. See Ward, 786 F.2d at 847-48; Steed, 524 F.3d at 876. Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations.

In conclusion, the court finds that the ALJ gave proper weight to Dr. Armas's opinion and the ALJ's decision in this regard is based on substantial evidence.

**C.      The Opinion of Price Gholson, Psy.D.:**

Dr. Gholson evaluated Plaintiff on June 19, 2009, for the purposes of determining State medical assistance. Dr. Gholson completed a Mental Status Exam Checklist on which he indicated that Plaintiff was "average/satisfactory" in regard to appearance; that her affect appropriateness was

average; that her mood was "low/below average; that her thought process was "average/satisfactory"; that her thought content was "high/above average in two areas and "average/satisfactory"; that her intellectual functioning was "average/satisfactory" in seven out of eleven areas, including general intelligence, orientation, ability to abstract, change a dollar, spelling a word backwards, and judgment; that her intellectual functioning was "low/below average" in recent and remote memory and "very low/inadequate" in serial series; that her insight was "average/satisfactory"; that her intellectual insight was "average/satisfactory" and her emotional insight was "low/below average"; that her organizational ability in goal striving was "average/satisfactory"; and that her appropriateness of goal striving was "low/below average." Tr. 331. Dr. Gholson also reported that Plaintiff's verbal behavior was average; that her non-verbal behavior was anxious; that her attention and concentration were fair; that she had a GAF of 50; and that her incapacity would last twelve months or more.

The ALJ specifically stated that Dr. Gholson's opinion was not entitled to great weight and said that "[i]t is common knowledge that the Missouri standard in practice is quite lenient. Medical examinations leading to the assessment are often not extensive, and the concluding reports are often based on subjective allegations by the claimant or old or marginally documented medical records." Tr.15 n.2. The ALJ also considered that Missouri law requires only that the period of unemployability last ninety days or longer and that the Social Security Administration operates under laws and regulations which differ from those of Missouri. Tr. 15 n.2.

First, Dr. Gholson was not Plaintiff's treating doctor and, as such, his opinion is not controlling. See Chamberlain, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424).

Second, to the extent Dr. Gholson opined that Plaintiff is unable to work, whether a claimant is able to return to work "involves an issue reserved for the Commissioner and therefore is not the

type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

Third, as stated above, checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Social Security Ruling 96-2p, (July 2, 1996); Johnson, 628 F.3d at 992; Stormo, 377 F.3d at 805-06; Hogan, 239 F.3d at 961.

Fourth, Dr. Gholson's report generally found Plaintiff's mental status was "average/satisfactory," and, as such, it does not support a finding that Plaintiff is disabled within the meaning of the Act.

Fifth, to the extent Dr. Gholson assigned Plaintiff a GAF of 50, the court has addressed the weight to be given a GAF finding above.

Sixth, Dr. Gholson's report does not reflect that he conducted any testing to reach his opinion. See Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987) (holding that where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight). Rather, Dr. Gholson's report suggests that he relied on Plaintiff's self reporting of her symptoms. Where diagnoses of doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques and where they are based on a claimant's self-reporting, the court need not accord such diagnoses great weight. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

Seventh, the ALJ did take Dr. Gholson's findings into consideration in that he limited Plaintiff

to light work with the additional non-exertional restrictions of her doing no more than low stress, simple, repetitive tasks; that Plaintiff have no more than occasional decision making or changes in the workplace; that she be restricted in regard to production quotas; and that she have no more than occasional contact with co-workers or the general public. Tr. 17. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis, 392 F.3d at 994 ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions."). See also Martise, 641 F3d at 926 (quoting Ellis, 392 F.3d at 994).

In conclusion, the court finds that the ALJ gave proper weight to Dr. Gholson's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence.

**D.     Plaintiff's RFC:**

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney, 228 F.3d at 863). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ

must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

The ALJ found that Plaintiff had the RFC to perform the physical exertional and non-exertional requirements of work except for:

> lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally; doing more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; gripping objects firmly bilaterally; doing more than low stress, simple, repetitive tasks or more than occasional decisionmaking or changes in the workplace; or having production quotas or more than occasional [contact] with co-workers or the general public.

Tr. 17.

The ALJ clarified that Plaintiff's ability to perform the "full range of at least light work is reduced by the limitations describe[d] [above]." Tr. 17. The regulations define light work as

'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6.

As required by the regulations, the ALJ considered Plaintiff's credibility and only included in Plaintiff's RFC those restrictions which the ALJ found credible. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). The court has found that the ALJ's credibility determination is based on substantial evidence and that it is consistent with the regulations and case law.

Further, upon determining Plaintiff's RFC, the ALJ considered the record as a whole, including the opinions and records of treating and examining doctors and objective test results. See McKinney, 228 F.3d at 863 ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995). After doing so, the ALJ took into consideration limitations supported by the record. The court finds that the ALJ's consideration of the medical evidence in regard to his determining Plaintiff's RFC is based on substantial evidence.

To the extent Plaintiff contends that the ALJ should have found her disabled merely because she has a physical impairment as well as a mental impairment, as discussed above, the mere presence of an impairment is not disabling in itself. See Trenary, 898 F.2d at 1364; Dunlap, 649 F.2d at 638.

Additionally, the ALJ first identified Plaintiff's functional limitations and restrictions, and then assessed her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004).

To the extent Plaintiff argues that the ALJ did not account for her difficulty reading and writing and her limited education, Plaintiff's medical records, as addressed in detail above, reflect that she was of average intelligence. To the extent Plaintiff argues that the record does not establish that she could stand for six hours a day or grip objects, "[a] disability claimant has the burden to establish [his or] her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737). See also Vossen, 612 F.3d at 1016. Moreover, the ALJ did incorporate a griping restriction in Plaintiff's RFC in that he limited her to engaging in no more than occasional gripping objects firmly bilaterally.

In conclusion, the court finds that the ALJ's RFC determination is based on substantial evidence and that it is consistent with the requirements of the regulations and case law.

**D.    Testimony of the VE:**

The ALJ posed a hypothetical to a VE which described a person consistent with the RFC the ALJ assigned to Plaintiff. The hypothetical also described a person of Plaintiff's age, education, and vocational background. The VE testified that there are jobs in significant numbers in the national and local economy which such a hypothetical person could perform. Significantly, the court has found that the ALJ's RFC determination is based on substantial evidence.

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Martise, 691 F.3d at 927 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th

Cir.2006)); Guilliams, 393 F.3d at 804 (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health, Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio, 862 F.2d at 180. The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Martise, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix, 465 F.3d at 889; Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). Thus, the court finds without merit Plaintiff's argument that the ALJ should have found her disabled because the VE testified that an RFC for sedentary work would result in no work being available for her; the ALJ found Plaintiff had the RFC for light work with additional restrictions, not the RFC for sedentary work with the same restrictions.

Moreover, in Grissom v. Barnhart, 416 F.3d 834, 836 (8th Cir. 2005), the Eighth Circuit held

that a VE's testimony constitutes substantial evidence when it is based on a properly phrased hypothetical question. Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir.2004) (citing Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir.1996)). Because the hypothetical posed to the VE upon which the ALJ relied was properly phrased, the court finds that the VE's testimony that there is work which Plaintiff can perform is based on substantial evidence. The VE's testimony, therefore, is substantial evidence in support of the ALJ's determination that Plaintiff was not disabled. See Martise, 641 F.3d at 927.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 12.

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 5th day of June, 2012.